Roger L. Monier, Plaintiff-Appellee, v. Vernon Chamberlain, Defendant-Appellant. Eugene H. Rennick, Jr., and Country Mutual Insurance Company, a Corporation, Additional Appellants.

Gen. No. 64–79.

Third District.

January 14, 1966.

Davis, Morgan & Witherell, of Peoria, for appellants.

O. B. Pace, Jr., and Peter J. Paolucci, of Lacon, for appellee.

STOUDER, J.

This is an appeal from an order of the Circuit Court of Marshall County finding the appellants, Eugene H. Rennick, Jr. and Country Mutual Insurance Company, a corporation, guilty of contempt of court and fining each of them $50.

Appellee instituted this action in the Circuit Court of Marshall County to recover damages for personal injuries caused by the alleged negligent operation of a motor vehicle by Vernon Chamberlain, one of the appellants. An answer to the complaint was filed by Eugene H. Rennick, Jr., attorney for Vernon Chamberlain pursuant to his employment for that purpose by Country Mutual Insurance Co., insurance carrier for Chamberlain under a liability policy containing the usual provisions including the obligation to defend the claim brought by this action. Appellee filed two motions supported by affidavits requesting that appellants Vernon Chamberlain and Country Mutual Insurance Co. be ordered to produce certain documents for inspection and copying. Said appellants filed an answer and objection in opposition to the motions and after a hearing thereon an order was entered directing Eugene H. Rennick, Jr. and Country Mutual Insurance Co. to produce these documents for inspection and copying.

474

The affidavits in support of the motion for production of documents were executed upon information and belief by O. B. Pace, Jr., one of the attorneys for appellee. These affidavits stated in substance: (1) that appellee was injured on March 20, 1960 after having been struck by a motor vehicle operated by Vernon Chamberlain resulting in injuries requiring hospitalization for several months; (2) Appellee's injuries included loss of memory and mental impairment which continued from the date of the mishap to the date of the affidavit; (3) that because of appellee's mental and physical condition, he was unable to recall or provide information concerning the accident, the medical treatment which he received, or the events which took place thereafter; (4) that Country Mutual Insurance Co. was the liability insurer of the vehicle operated by Vernon Chamberlain and also carried an automobile policy with medical coverage on Appellee; (5) that because Country Mutual Insurance Co. had insurance with both parties to the mishap it was able to secure statements, reports, receipts, bills and other documents from the appellee, his family, doctors and hospitals; (6) that Appellee did not employ counsel until nearly two years after the mishap had occurred; (7) that Vernon Chamberlain during a pretrial discovery deposition and on advice of his attorney, Eugene H. Rennick, Jr., refused to answer any questions concerning his insurance coverage; and concluded by incorporating by reference, a letter addressed to the attorneys for Vernon Chamberlain requesting the production of the documents later made the subject of the motion to produce, the letter being unanswered.

A supplemental affidavit was filed by O. B. Pace, Jr., as attorney for appellee, its substance being that representatives of the Country Mutual Insurance Co. had participated in numerous conversations with appellee and his family and had assured appellee and his family that no litigation would be required and in fact a settlement

offer of $5,000 was made approximately six weeks prior to the expiration of the statute of limitations, said offer being refused. Subsequent thereto affiant was employed as counsel.

The order for inspection and production of documents after reciting the filing of the motion therefore is as follows; ". . . and it appearing to the court that certain of said documents and objects relate to the merits of the matter in litigation: It is therefore ordered that the Country Mutual Insurance Company, its employees and attorneys, and the defendant, Vernon Chamberlain, and his attorneys and agents, produce and permit the plaintiff to inspect, copy and reproduce the following items, documents and objects in the possession and power of the Country Mutual Insurance Company, and the defendant, Vernon Chamberlain, his attorneys and agents:

1) A copy and contents of the automobile insurance Policy No. A 434284 in force between the Country Mutual Insurance Company and the defendant, Vernon Chamberlain, on March 20, 1960.

2) All medical reports, hospital records, letters of correspondence from or to all physicians, surgeons, psychologists, psychiatrists, hospitals, clinics, or other medical personnel concerning the health, physical and mental condition of Roger L. Monier from March 20, 1960, up to the date of employment of counsel for the defendant.

3) All statements made by the plaintiff or members of his family relative to the subject of litigation, whether signed or unsigned.

4) All memoranda made by personnel of the Country Mutual Insurance Company of conversations with the plaintiff and members of his family relative to the matter of litigation.

5) All written statements of witnesses, whether signed or unsigned, obtained by agents, employees or other personnel of the Country Mutual Insurance Company obtained prior to the employment of Eugene H. Rennick, Jr., Attorney at Law, Toulon, Illinois, or Robt. A. Barnes, Attorney at Law, Lacon, Illinois, attorneys for the defendant in the cause.

6) All reports, photographs and statements obtained by agents, employees, investigators, adjusters or other personnel of the Country Mutual Insurance Company relative to or growing out of the transaction complained of on March 20, 1960, which were obtained prior to the employment of Eugene Rennick, Attorney at Law, Toulon, Illinois, and Robert A. Barnes, Attorney at Law, Lacon, Illinois, attorneys for the defendant in this cause.

7) All medical reports or memoranda concerning the health and physical or mental condition of the plaintiff, Roger L. Monier, as it existed prior to the occurrence complained of.

It is further ordered that said documents and objects be produced at the office of the Clerk of the Circuit Court of Marshall County in the City of Lacon, Illinois, on the 7th day of November, 1963, at ten o'clock a. m. and on each business day thereafter between ten o'clock a. m. and 4:30 o'clock p. m. until said examination shall be completed."

Rennick produced the insurance policy and the limits of said policy, but filed a response to the court's order in which he stated that Country Mutual Insurance Company did not have a statement from Roger Monier, signed or unsigned, and that the remainder of his file was in preparation for trial, and therefore privileged against disclosure. Rennick further stated that his refusal to obey the order was not malicious or capricious but because he believed the order to be invalid.

At the hearing on the contempt proceeding thereafter instituted each appellant refused to comply with the order continuing to claim that the order was invalid. From a fine of $50 for each of the appellants this appeal follows.

This appeal was originally taken to the Illinois Supreme Court but was transferred to this court because appellants have no right of direct appeal to the Supreme Court.

We believe appellants' arguments as to unconstitutionality are without merit. Appellant does not argue that the Supreme Court rules are themselves unconstitutional but only that the order violated the constitutional requirements of due process and freedom from unreasonable search and seizure. If the order was within the intendments of the rules there is no constitutional question. If the order was in violation of these rules this alone would make it invalid and the constitutional question becomes immaterial.

Supreme Court Rule 17 on the basis of which the order below was entered, is as follows: "A party may at any time move for an order directing any other party or person to produce specified documents relating to the merits of the matter in litigation, for inspection and to be copied or reproduced, . . . or disclose information calculated to lead to the discovery of the whereabouts of any of the items. On the hearing the court may make any order that may be just. If the party or person claims that the item is not in his possession or control or that he does not have information calculated to lead to discovery of its whereabouts, he may be ordered to submit to examination in open court or by deposition regarding the same." This rule was adopted in 1956 and represented a change from the former rule in that the former listing procedure was abolished.

Rule 19–5 upon which defendant predicated his argument of privilege reads, "(1) Matters privileged against

discovery. All matters which are privileged against disclosure upon the trial are privileged against disclosure through any discovery procedure. Disclosure of memoranda, reports or documents made by or for a party in preparation for trial or any privileged communications between any party or his agent and the attorney for the party shall not be required through any discovery procedure." This rule was intended to codify the existing law as established by court decisions and which the authors considered had previously been spelled out in part only.

Appellants claim that the order of the trial court violated Rule 17 in that the documents and material directed to be produced were not sufficiently "specified" and demanded from appellants a conclusion as to the materiality of any documents which they might be required to produce. They also argue that compliance with the order would violate section 19–5(1) as requiring disclosure of memoranda, reports or documents made by or for a party in preparation for trial. It is this argument which we shall first discuss.

This court has exhaustively reviewed all cases presented to it on the interpretation of Rule 19–5(1) as well as any additional cases which we have found. Prior to the decision of our Supreme Court in Stimpert v. Abdnour, 24 Ill2d 26, 179 NE2d 602 (decided in 1962), the decisions of the Appellate Courts afford little assistance in a general interpretation of this Rule. Each of the decisions which we have considered, dealt with a far more definitive and limited area than that which we are considering in the instant case, and in effect decided only whether a specific document was or was not discoverable in a particular circumstance. (See Hayes v. CTA 340 Ill App 375, 92 NE2d 174; Chapman v. Gulf M. & O. R. Co. 337 Ill App 611, 86 NE2d 552; People v. White 8 Ill App2d 428, 131 NE2d 803; Kemeny v. Skorch 22 Ill App2d 160, 159 NE2d 489; Haskell v. Seigmund 28 Ill App2d 1, 170

NE2d 393; and Reske v. Klein 33 Ill App2d 302, 179 NE2d 415). We are being called upon here to interpret Rule 19–5(1) in a far more general area than any previous case which has come to our attention and in so doing must be guided by previous decisions of our Supreme Court in so far as it is possible.

In Krupp v. CTA 8 Ill2d 37, 132 NE2d 532, the Supreme Court of Illinois held specifically that the names of occurrence witnesses, as distinguished from witnesses who might or would be called to testify in the cause were discoverable. The court then went on to say that the broad purpose of the discovery procedure was to de-emphasize the adversary quality of litigation and reassert the higher aim of ascertaining the truth. The court there stated, "Discovery before trial presupposes a range of relevance and materiality which includes not only what is admissible at the trial but also that which leads to what is admissible at the trial. We need not now fix ultimate boundaries. It is enough for this case that the names of these persons who have first hand knowledge of the occurrence which gave rise to the action are unquestionably relevant and material." In discussing the matter of privilege from disclosure the court went on to say that one who asserts a privilege has the burden of proving it, "his mere assertion that the matter is privileged will not suffice." The Krupp case, supra, decided in 1956 even though limited in its application to discovery of a specific type of information, clearly indicated the intention of the Supreme Court that its Rules would, under the proper circumstances, be given a much broader application.

In Stimpert v. Abdnour, supra, the Supreme Court held that a statement of the Defendant given to and transcribed by plaintiff and his attorney, was within the purview of Rule 17 and was not exempt from disclosure as a document made in preparation for trial. After sorting through the somewhat confusing mass of

480

appellate decisions the court stated "While it may be possible to reconcile the holdings of the preceding cases, it would be unrealistic to contend that the interpretations of our Rule 19–5(1) are *consistent in philosophy*" (emphasis added). The court then added what we perceive to be its philosophy in the interpretation of its Rule. "The discovery provisions of the Civil Practice Act and our Supreme Court Rules were enacted to broaden the scope of available discovery to enhance the true function of a trial as a means of ascertaining the truth, and to provide methods (for) the prompt and just disposition of litigation . . . Our promulgation of Rule 19–5(1) was not inconsistent with this philosophy but was an effort to protect litigants from unnecessary harrassment and violations of their well recognized rights. The first and third exemptions stated in the rule merely protect from discovery matters that were privileged from disclosure upon trial at common law. The second exemption, sometimes loosely referred to as the "work product" privilege, was believed necessary to prevent complete invasion of the files of counsel. It is clear that this exemption would protect notes and memoranda prepared by counsel for use in trial (citations). *As properly understood, however, this rule does not protect material and relevant evidentiary facts from the truth seeking processes of discovery*" (emphasis ours). The court then held that the statement should have been produced as containing material evidentiary matters and that merely transcribing these matters should not bring them within the exemption of Rule 19–5(1). Again, the Supreme Court was deciding that a specific document was subject to Rule 17 but in so doing indicated that the intention was to broaden the application of its Rule.

Since the Stimpert case the Appellate Courts have had occasion to examine Rules 17 and 19–5(1) in People v. Ryan 40 Ill App2d 352, 189 NE2d 763; Oberkircher v. C. T. A. 41 Ill App2d 68, 190 NE2d 170; Koch v. Mettler

49 Ill App2d 251, 199 NE2d 417 and Day v. Illinois Power Co. 50 Ill App2d 52, 199 NE2d 802. In all except the Day case the decision dealt only with the attorney-client privilege. The Day case, decided June 10, 1964, is the latest we have found interpreting Rule 19-5(1). There, a gas main belonging to defendant corporation, ruptured causing injuries to plaintiff. After the explosion, employees of the defendant examined, inspected and repaired the main and made all reports directly to and under the supervision of defendant's attorney who was retained by the corporation on a monthly basis. After deciding that the reports were not privileged as a communication between attorney and client, the court discussed the "preparation for trial" or "work product" exemption and said "Where it appears as here that one party has exclusive control over the circumstances surrounding an event and has exclusive and superior opportunity to know or ascertain the facts, we believe that good cause exists to require that party to disclose such portions of any report that might contain the statements of potential witnesses or facts personally observed by them."

For purposes of clarification we prefer to reserve the word privilege for that part of Rule 19-5(1) which deals with matters privileged against disclosure upon trial or as a communication between attorney and client and to use the term "exemption" for memoranda, reports or documents made by or for a party in preparation for trial. We shall consider first the exemption under the preparation for trial or work product doctrine.

Appellants clearly recognize that the order is at least partially valid. They were ordered to produce an insurance policy and did so. They were ordered to produce statements of plaintiff and stated that they had no such statements, by implication, admitting that if they did, the statements would be properly demanded.

█ Insofar as the order requires production of medical reports and related matter as required by paragraphs 2 and 7 of the order, we must hold that these materials do come within the purview of Rule 17 and are not exempt from disclosure. Medical reports and correspondence, as to plaintiff's condition, by plaintiff's own physicians all are things to which plaintiff and only plaintiff had any right in the first instance. Appellant company or any third person could acquire rights to these reports only through the consent of the plaintiff, express or implied. Defendants do not deny that they possess such reports and related matters nor do they indicate in what manner and under what circumstances they may have been acquired. Defendants do not show the circumstances of acquisition but simply state that the materials are exempt. Defendants have not met the test imposed upon them by Krupp v. CTA, supra, and without so doing may not be permitted to refuse to produce these reports and related material. We believe that plaintiff is entitled to know the contents of any medical reports or related matters which may have been given to defendants in his behalf. Nor should defendant's argument that such information was otherwise available prevail. The facts do not show such availability through other channels but we must deem this to be immaterial. Rule 17 contains no requirement that all other avenues must be exhausted before it may operate.

We must also hold that memoranda of conversations with plaintiff must be produced. Under the ruling of the Stimpert case we can perceive of no reason for holding that the actual statement of plaintiff may be required without also holding that the memoranda of conversations from which such statement could be made must be produced.

█ The undisputed facts as set forth in the affidavit in support of plaintiff's motion, namely that plaintiff has

been mentally and physically incompetent since the date of the accident, compel us to hold that statements of members of plaintiff's family or memoranda thereof as provided in paragraphs 3 and 4 of said order are properly required. It is clear from the facts disclosed by such affidavit that the exigencies arising from plaintiff's mental and physical condition necessarily required plaintiff's family to act in his behalf. It is equally clear that appellant company dealt with members of plaintiff's family in their representative capacity. Accordingly we believe that statements of members of plaintiff's family or memoranda of conversations with his family are in effect statements of the plaintiff himself and hence properly requested on the same theory that plaintiff's statements or memoranda thereof are discoverable.

We believe that the philosophy and theory of the Stimpert and Krupp cases, supra, support the propriety of the production of the documents described in paragraph 6 of the court's order in its application to documents other than any statement of defendant. Such documents could be independently admissible as evidence or could lead to the discovery of admissible evidence. As in the aforementioned cases the mere fact that a document was obtained or information received in the course of an investigation of an accident does not exempt the results of such investigation as being in preparation for trial. The production of the documents as provided for in this paragraph is consistent with the purposes and policies of our discovery procedure, namely disclosure rather than concealment, and in no way invades or limits the endeavors of a litigant in the preparation of his case for trial.

Although the production of the documents is proper under the reasoning above, it is also possible in view of the uncontradicted facts in the affidavit, concerning Plaintiff's mental and physical condition, that the production of said documents could be required by the Day

484

case, supra, namely, as being matters peculiarly within the knowledge and control of Defendants.

To the extent that paragraph 6 of the order might include a statement of defendant, given to his insurance carrier before employment of counsel, we believe that a different principle is applicable. People v. Ryan 40 Ill App2d 352, 189 NE2d 763, holds that such a statement is not discoverable. The theory and reasoning of the Ryan case, is that a statement given to an insurance company by its insured is for the purpose of enabling the company to defend the insured under the terms of its policy and as such the company is considered an agent for transmittal of the statement to an attorney who might be employed to defend the insured. The statement is considered to be a privileged communication in the hands of the insurance company and clothed with the same exemption from disclosure as if given to an attorney directly. If, in the instant case, appellant insurance company was the insurance carrier for Defendant only the precedent of the Ryan case, would be controlling and paragraph 6 of the order would be improper in so far as it directed the production of the defendant's statement.

However in the instant case we have an additional element namely the fact that appellant insurance company was also the insurance company for plaintiff. Its relationship to the accident and to the parties was a dual relationship resulting from policies of insurance with each party.

In Dickerson v. Dickerson 322 Ill 492, 153 NE 740, the court quotes Wigmore on Evidence, Volume 5, Section 2285 with respect to the necessary conditions upon which privileged communications are predicated as follows: " (1) The communications must originate in a confidence that they will not be disclosed; (2) the element of confidentiality must be essential to the full and satisfactory maintenance of the relation between the parties; (3) the relation must be one which, in the opinion of the com-

485

munity, ought to be sedulously fostered; and (4) the injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of the litigation."

Thus it can be seen that the essence of a privileged communication between attorney and client and likewise the basis for its exemption from discovery is its confidentiality. A disclosure which otherwise might be deemed privileged is not so privileged when made in the presence of an adverse party and his attorney. Scott v. Aultman Co. 211 Ill 612, 71 NE 1112. Where, from the nature of the communication between client and attorney, and the purpose to be served by such communication, it is evident that the parties intended such communication to be disclosed, no privilege against disclosure exists. Dickerson v. Dickerson, supra.

In the instant case, appellant insurance company under the reasoning of the Ryan Case, supra, was acting as the agent for each insured with respect to communications which it might receive from either of them. Communication by one insured was in fact disclosure to an agent for his adversary, such disclosure being compatible with, and not in opposition to, the terms of the communication. Accordingly, we hold that under these limited circumstances, logic and fair play permit and require the discoverability of the Defendant's communication with his insurance company. Not only is such communication not confidential by its terms and the circumstances but it is also evident that confidentiality is not essential to a satisfactory maintenance of the relation between the parties. To hold otherwise would be an anomaly. The defendant might have the benefit of plaintiff's communications with insurer but plaintiff would be denied the same benefit. To the extent that our views expressed herein are inconsistent with McKnight v. Dennis, 51 Ill App2d 403, 201 NE2d 461, we believe that the above reasoning requires a contrary holding.

486

The statements required by paragraph 5 of the order we must hold to be outside the scope of Rule 17 and hence not subject to discovery. Our decision is however, not based on the various exemptions as contained in Rule 19–5(1) but upon the fact that the description of the statements demanded lacks the specificity required in Rule 17. We do not intend to imply that each document sought must be specifically and in detail described but rather that the classification must be narrow enough to permit Defendant to identify a specific document as falling within it. Where a request is made for "all written statements" as ordered in paragraph 5 there is nothing therein contained which even limits such statements to the immediate cause of action.

Appellants argue that to force them to decide what is relevant and what is not makes the order invalid in its entirety. They rely on Reske v. Klein, 33 Ill App2d 302, 179 NE2d 415, where the Court did hold that an interrogatory must be so framed as to permit an answer without forcing a conclusion on the part of the witness. We submit that the Court did not intend to suggest that no conclusion at all, could ever be required. To do so would be to suggest that the names of occurrence witnesses could not be elicited since a conclusion to some extent is required. Rather we suggest that, the court in the Reske case, intended to narrow the area of conclusion which could be sought. To the extent that the order is valid and the documents required are in existence and in the possession of defendants, they should have been produced. Accordingly the judgment of the Circuit Court of Marshall County is affirmed in part and reversed in part.

We must further consider that the refusal to produce was made to test the validity of the order. Accordingly, if and when our decision becomes final and a mandate is filed in the Circuit Court of Marshall County, that court is directed to enter an order providing that

appellants may purge themselves of contempt by producing the documents in question within 10 days of the filing of the mandate, in default of which the contempt order is to stand. We also believe that the court is not limited to the action already taken to secure compliance with its order but may take any other action which may be appropriate under the statutes and rules of this Court to secure compliance with such order.

Affirmed in part and reversed in part with directions.

CORYN, P. J. and ALLOY, J., concur.